**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STARR SURPLUS LINES INSURANCE COMPANY, as subrogee of City of Hope National Medical Center,<br><br>Plaintiff,<br><br>vs.<br><br>INFINITE COMPUTER SOLUTIONS, INC.<br><br>Defendants. | Case No. 26-cv-2424 |

**COMPLAINT**

Starr Surplus Lines Insurance Company ("Starr"), as subrogee of its insured, City of Hope National Medical Center ("COH"), by and through its undersigned counsel, hereby brings this lawsuit against Infinite Computer Solutions, Inc. ("ICS") and alleges the following:

**INTRODUCTION**

1. Starr files this Complaint because, upon information and belief, ICS breached an agreement that required it to obtain liability insurance for Starr's insured, COH.

2. Prior to filing this Complaint, between July 7, 2023, and October 15, 2023, an unauthorized actor breached COH's network and exfiltrated certain data and information between September 19, 2023, and October 12, 2023 (the "Data Security Incident"). ICS provided COH with information technology services for COH's network, and upon information and belief, ICS bore responsibility for causing and/or contributing to the Data Security Incident.

3. In response to the Data Security Incident, multiple class action plaintiffs filed lawsuits against COH, all of which were eventually consolidated into the action *In re City of Hope Data Security Breach Litigation*, Case No. 24STCV09935, in the Superior Court of California for the County of Los Angeles (the "Underlying Lawsuits").

4. Starr insures COH under an excess information security insurance policy (the "Excess Policy") and agreed to provide COH with indemnity and defense, subject to its reservation of rights, for the Data Security Incident and Underlying Lawsuits. Starr also agreed to fund a class action settlement to resolve the Underlying Lawsuits against COH.

5. Before the Data Security Incident, ICS and COH entered into a "Business Associate Agreement" on September 23, 2016 (the "BAA"). Section 16 of the BAA required ICS to obtain liability insurance for COH as an additional named insured with limits of $3 million per claim, and that "[a] copy of such policy or a certificate evidencing the policy shall be provided to COH upon written request." Section 17 of BAA also requires ICS to indemnify COH "from and against any and all liability and costs, including attorney's fees, arising from or in connection with a breach of [the BAA] by [ICS]," including a breach under Section 16 for failing to obtain the agreed upon liability insurance.

6. On January 24, 2024, and April 30, 2024, COH provided notices of the Data Security Incident and/or related legal actions to ICS, and demanded indemnification under various agreements, including the BAA.

7. Upon information and belief, COH, through its counsel, Jones Day, requested a copy of the liability policy pursuant to Section 16 of the BAA on December 17, 2024, as well as on January 24, 2025, but ICS declined those requests. Likewise, Starr, on behalf of COH, also requested a copy of the liability policy on February 24, 2025, and March 13, 2026. Again, ICS refused to provide a copy of the liability insurance policy required under Section 16 of the BAA.

8. Based on ICS's continued refusal to provide a copy of the liability policy, upon information and belief, ICS failed to obtain $3 million in liability coverage that named COH as an

additional named insured, as required by Section 16 of the BAA. Otherwise, ICS would have furnished a copy of the liability insurance policy or a certificate of insurance.

9. Upon information and belief, the liability insurance required by Section 16 of the BAA would have provided primary insurance coverage to COH for the Data Security Incident and the Underlying Lawsuits.

10. As a result, Starr, as subrogee of COH, has been harmed by ICS's failure to obtain the insurance that it promised to COH. Starr now seeks reimbursement and indemnification for the damages it sustained due to ICS's breaches under the BAA.

## PARTIES, JURISDICTION, AND VENUE

11. Starr is a citizen of Texas and New York within the meaning of 28 U.S.C. § 1332(c)(1), as it is incorporated in Texas and has its principal place of business in New York, New York.

12. ICS is a citizen of Delaware and Maryland within the meaning of 28 U.S.C. § 1332(c)(1), as it is incorporated in Delaware and has its principal place of business in Rockville, Maryland.

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Starr and ICS, and the aggregate amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because ICS maintains its principal place of business in this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

## BACKGROUND

### A. The Data Security Incident and the Underlying Lawsuits

15. Between July 7, 2023, and October 15, 2023, an unauthorized threat actor breached COH's network and, after gaining access to the network, the unauthorized threat actor exfiltrated certain data and information between September 19, 2023 and October 12, 2023 (the "Data Security Incident"). ICS provided COH with information technology services for COH's network, and upon information and belief, ICS bore responsibility for causing and/or contributing to the Data Security Incident.

16. On or about December 14, 2023, COH provided initial notice of the Data Security Incident to potentially affected individuals via email, and on or about April 2, 2024, COH provided formal notice to such affected individuals (the "Notice"). An example of a true and correct copy of the Notice is attached hereto as Exhibit 1.

17. Following the Data Security Incident, numerous class action plaintiffs filed lawsuits against COH in the United States District Court for the Central District of California[1] and the Superior Court of California for the County of Los Angeles.[2] All the remaining lawsuits have now been consolidated into the action captioned *In re City of Hope Data Security Breach Litigation*, Case No. 24STCV09935, in the Superior Court of California for the County of Los

[1] *See, e.g.*, *Graciela Rodriguez v. City of Hope National Medical Center*, Case No. 2:24-CV-02761; *Lynsey Saurenmann v. City of Hope National Medical Center*, Case No. 2:24-cv-02860; *Laura Delapaz v. City of Hope National Medical Center*, Case No. 2:24-cv-02885; *Patricia Lopez v. City of Hope National Medical Center*, Case No. 2:24-cv-02879; *Brian Ridley v. City of Hope National Medical Center*, Case No. 2:24-cv-02890; *Pamela Krause v. City of Hope National Medical Center*, Case No. 2:24-cv-02894; *Tammy L. Julian v. City of Hope National Medical Center*, Case No. 2:24-cv-02898; *L. E. v. City of Hope National Medical Center*, Case No. 2:24-cv-02967; *Christopher Mastro v. City of Hope National Medical Center*, Case No. 8:24-cv-00848; *Samuel Tsou v. City of Hope National Medical Center*, Case No. 2:24-cv-3258; *Jospeh DeRivera, et al v. City of Hope National Medical Center*, No. 2:24-cv-03573; and *John Sjodin v. City of Hope National Medical Center*, Case No. 5:24-cv-00847.

[2] *See, e.g.*, *Carli Rodriguez v. City of Hope National Medical Center d/b/a City of Hope*, No. 24STCV09935; *Haskins v. City of Hope National Medical Center*, No. 24STCV14723; and *Manley v. City of Hope National Medical Center*, No. 24STCV20862.

Angeles (the "Underlying Lawsuits"). The "Consolidated Class Action Complaint" (the "Complaint") in the Underlying Lawsuits alleged that COH mishandled "personally identifiable information" and "protected health information" under numerous statutory and common law causes of action. A true and correct copy of the Complaint is attached hereto as Exhibit 2.

18. The class action plaintiffs in the Underlying Lawsuits have reached a global settlement with COH. A true and correct copy of the court's "Order Granting Final Approval of Class Action Settlement and Final Order and Judgment" is attached hereto as Exhibit 3.

19. Prior to the Data Security Incident, Starr issued Secure Excess Liability Policy No. SLSLPRX26638422 to COH for the October 31, 2022, to October 31, 2023, policy period (the "Excess Policy"), which follows form to Beazley InfoSec Policy No. W33BED220101 (the "Primary Policy") issued to COH by Certain Underwriters at Lloyd's, London Syndicates 2623 and 623. A true and correct copy of the Excess Policy is attached hereto as Exhibit 4, and a true and correct copy of the Primary Policy is attached hereto as Exhibit 5.

20. Starr has defended COH in the Underlying Lawsuits and funded the settlement with the class action plaintiffs subject to its reservation of rights under the Excess Policy and applicable law. Consequently, Starr is contractually subrogated to the rights of COH, including any claims against ICS with respect to the Data Security Incident and Underlying Lawsuits. *See* Ex. 5, Primary Policy, "Subrogation" condition (page 20 of 22).

**B. ICS Failed to Obtain Additional Named Insured Coverage for COH**

21. As noted above, before the Data Security Incident, COH contracted with ICS to provide certain information technology support for COH's network, and the parties signed a "Business Associate Agreement" entered into on September 23, 2016 (the "BAA"). A true and correct copy of the BAA is attached hereto as Exhibit 6.

22. The BAA includes "Insurance" and "Indemnification" provisions, which state the following:

> 16. Insurance. Vendor shall obtain and maintain during the term of this Agreement liability insurance covering claims based on a violation of this Agreement or any applicable state law or regulation concerning the privacy of patient information and claims in an amount not less than $3,000,000 per claim. Such insurance shall be on a claims made basis with tail coverage and shall name COH as an additional named insured. A copy of such policy or a certificate evidencing the policy shall be provided to COH upon written request.
>
> 17. Indemnification. Vendor shall indemnify and hold COH and its directors, officers, employees, agents, subcontractors, or members of its workforce, harmless from and against any and all liability and costs, including attorney's fees, arising from or in connection with a breach of this Agreement by Vendor, its directors, officers, employees, agents, Subcontractors, or workforce without regard to any limitation or exclusion of damages provision otherwise set forth in the applicable Service Agreement. Vendor's obligation to indemnify COH shall survive the expiration or termination of this Agreement.

* * *

23. As outlined in the quoted language above, Section 16 of the BAA required ICS to obtain liability insurance naming COH as an additional named insured with limits of $3 million per claim, on a claims made basis with tail coverage.

24. Section 17 of the BAA also requires ICS to "indemnify and hold COH . . . from and against any and all liability and costs, including attorney's fees, arising from or in connection with a breach of this Agreement by [ICS]," which includes liability for ICS's failure to obtain insurance outlined in Section 16. *See* Ex. 6.

25. The Underlying Lawsuits assert causes of action based on alleged violations of state laws and regulations concerning the privacy of patient information, which is the subject matter that Section 16 required ICS's liability insurance policy to cover. Accordingly, ICS had a legal responsibility to COH for the Data Security Incident and Underlying Lawsuits by, among other things, providing responsive liability insurance under Section 16 of the BAA.

26. On January 24, 2024, COH provided notice of the Data Security Incident to ICS and demanded indemnification from ICS under various agreements, including pursuant to Sections 17 and 18 of the BAA. A true and correct copy of COH's notice on January 24, 2024 to ICS is attached hereto as Exhibit 7.

27. COH followed up with ICS on April 30, 2024, again demanding indemnification for the Data Security Incident under the BAA, in addition to other agreements signed by the parties. A true and correct copy of COH's notice on April 30, 2024 to ICS is attached hereto as Exhibit 8.

28. Upon information and belief, COH, through its counsel, Jones Day, also requested a copy of the liability policy pursuant to Section 16 of the BAA on December 17, 2024, as well as on January 24, 2025.

29. On February 24, 2025, Starr, as subrogee of COH, requested a copy of the liability policy pursuant to Section 16 of the BAA. Starr also demanded that ICS defend and indemnify COH for the Data Security Incident and Underlying Lawsuits, advising ICS that COH reached a preliminary settlement with the class action plaintiffs in the Underlying Lawsuits. ICS declined both of Starr's requests.

30. On March 13, 2026, Starr again requested that ICS provide a copy of the liability insurance policy under Section 16 of the BAA and demanded indemnification for the Data Security Incident and Underlying Lawsuits. Starr advised ICS that the court had recently approved a settlement between COH and the class action plaintiffs in the Underlying Lawsuits. ICS again declined Starr's requests.

31. ICS did not respond to COH's and Starr's requests for the liability insurance, even though Section 16 of the BAA states, "A copy of such policy or a certificate evidencing the policy shall be provided to COH upon written request." ICS, therefore, breached the BAA by refusing to

provide a copy of the liability policy or a certificate evidencing the policy to COH and Starr pursuant to Section 16, despite ICS's contractual obligation to provide a copy upon written request.

32. Upon information and belief, based on ICS's repeated refusal to furnish evidence of the required liability coverage under Section 16 of the BAA and otherwise provide meaningful engagement with Starr, as subrogee of COH, on this issue, ICS did not obtain liability insurance in the amount of $3 million per claim that adds COH as an additional named insured, as required by Section 16 of the BAA. Accordingly, upon information and belief, ICS materially breached the BAA by failing to obtain the required insurance it promised to COH.

33. Upon information and belief, had ICS obtained the liability insurance policy pursuant to Section 16 of the BAA, it would have provided coverage for the Data Security Incident and/or Underlying Lawsuits. Consequently, ICS must indemnify COH for its failure to obtain liability insurance pursuant to Section 17 of the BAA.

34. As a result of Starr's payments under the Excess Policy, COH has been fully indemnified for its covered losses in connection with the Data Security Incident and the Underlying Lawsuits, and Starr is subrogated to COH's claims against ICS arising from ICS's failure to obtain insurance and other breaches under the BAA.

35. Due to ICS's breach and refusal to honor its obligations under Section 16 of the BAA, Starr has been forced to defend and indemnify COH for the Data Security Incident and Underlying Lawsuits without any contribution from ICS and/or its insurers. As a result of ICS's breaches under Section 16 of the BAA, Starr has suffered damages and is entitled to reimbursement from ICS. Thus, Starr, standing in the shoes of COH, is entitled to all costs and damages, including attorney's fees, arising from ICS's breaches under the BAA.

## COUNT I – SUBROGATION

**(Breach of Contract)**

36. Starr incorporates by reference the preceding allegations as set forth fully herein.

37. Any of COH's claims against ICS from the Data Security Incident and/or Underlying Lawsuits are subrogated to Starr pursuant to the terms of the Excess Policy, which follows form to the Primary Policy (*see* Ex. 5, Primary Policy, "Subrogation" condition), and by operation of applicable law.

38. During the period corresponding to the events surrounding the Data Security Incident and the allegations subject to the Underlying Lawsuits, ICS had a contractual obligation to obtain liability insurance naming COH as an additional named insured with limits of $3 million per claim, as outlined under Section 16 of the BAA.

39. Upon information and belief, ICS breached Section 16 of the BAA by failing to obtain liability insurance that named COH as an additional named insured with limits of $3 million per claim. Such insurance, if obtained, would have provided coverage for the Data Security Incident and/or Underlying Lawsuits.

40. Starr fully paid COH for any outstanding amounts COH incurred in connection with the Data Security Incident and the Underlying Lawsuits, including the settlement with the class action plaintiffs. Starr made these payments pursuant to its obligation under the Excess Policy and not as a volunteer.

41. COH had existing and valid claims against ICS for breaching Section 16 of the BAA, which could have been brought in the absence of Starr's payments to COH for the Data Security Incident and the Underlying Lawsuits.

42. Starr, standing in the shoes of COH, seeks reimbursement for the damages caused by ICS's contractual breach under Section 16 of the BAA. At a minimum, ICS's liability includes

$3 million in owed insurance coverage, representing the per-claim limit required by Section 16 under the BAA, together with any additional amounts recoverable under applicable law and the BAA.

43. Section 17 of the BAA also includes an indemnification clause, entitling COH to be indemnified for all costs, including attorney's fees, arising from or in connection with a breach of the BAA, such as ICS's breaches under the BAA described herein. Therefore, this litigation also constitutes an action to enforce the indemnity clause pursuant to Section 17 of the BAA.

44. Justice requires that the loss at issue be shifted from Starr to ICS, whose equitable position is inferior to that of Starr's because: (i) ICS caused and/or contributed to the Data Security Incident; (ii) ICS agreed to indemnify COH for any breach under the BAA; and (iii) public policy disfavors allowing ICS to breach its obligations under the BAA. Therefore, ICS is primarily responsible to COH for the Data Security Incident and/or Underlying Lawsuits.

45. Accordingly, ICS is liable to Starr, as COH's subrogee, for all the damages Starr incurred due to ICS's contractual breaches under the BAA as described herein, plus interest and costs, attorney's fees, and any other relief deemed appropriate by this Court.

**<u>COUNT II – SUBROGATION</u>**

**(Contractual Indemnification)**

46. Starr incorporates by reference the preceding allegations as set forth fully herein.

47. Any of COH's claims against ICS from the Data Security Incident and/or Underlying Lawsuits are subrogated to Starr pursuant to the terms of the Excess Policy, which follows form to the Primary Policy (*see* Ex. 5, Primary Policy, "Subrogation" condition), and by operation of applicable law.

48. During the period corresponding to the events surrounding the Data Security Incident and the allegations subject to the Underlying Lawsuits, ICS had a contractual obligation to obtain liability insurance naming COH as an additional named insured with limits of $3 million per claim, as outlined under Section 16 of the BAA.

49. Upon information and belief, ICS breached Section 16 of the BAA by failing to obtain liability insurance that named COH as an additional named insured with limits of $3 million per claim. Such insurance, if obtained, would have provided coverage for the Data Security Incident and/or Underlying Lawsuits.

50. Section 17 of the BAA requires ICS to "indemnify and hold COH . . . harmless from and against any and all liability and costs, including attorney's fees, arising from or in connection with a breach of [the BAA] by [ICS]," including for failing to obtain insurance under Section 16 of the BAA.

51. Starr fully paid COH for any outstanding amounts COH incurred in connection with the Data Security Incident and the Underlying Lawsuits, including the settlement with the class action plaintiffs. Starr made these payments pursuant to its obligation under the Excess Policy and not as a volunteer.

52. COH had existing and valid indemnification claims against ICS pursuant to Section 17 of the BAA, which could have been brought in the absence of Starr's payments to COH for the Data Security Incident and the Underlying Lawsuits.

53. Starr, standing in the shoes of COH, seeks contractual indemnification, including attorney's fees, for ICS's breach under Section 16 of the BAA—failing to obtain insurance. At a minimum, ICS's liability includes $3 million in owed insurance coverage, representing the

per-claim limit required by Section 16 under the BAA, together with any additional amounts recoverable under applicable law and the BAA.

54. Justice requires that the loss at issue be shifted from Starr to ICS, whose equitable position is inferior to that of Starr's because: (i) ICS caused and/or contributed to the Data Security Incident; (ii) ICS agreed to indemnify COH for any breach under the BAA; and (iii) public policy disfavors allowing ICS to breach its obligations under the BAA. Therefore, ICS is primarily responsible to COH for the Data Security Incident and/or Underlying Lawsuits.

55. Accordingly, ICS is liable to Starr, as COH's subrogee, for all the damages Starr incurred due to ICS's contractual breaches under the BAA as described herein, plus interest and costs, attorney's fees, and any other relief deemed appropriate by this Court.

## COUNT III – DECLARATORY RELIEF

56. Starr incorporates by reference the preceding allegations as set forth fully herein.

57. During the period corresponding to the events surrounding the Data Security Incident and the allegations subject to the Underlying Lawsuits, ICS had a contractual duty to obtain liability insurance naming COH as an additional named insured with limits of $3 million per claim, among other requirements, as outlined under Section 16 of the BAA.

58. Section 16 of the BAA states, "A copy of such policy or a certificate evidencing the policy shall be provided to COH upon written request." However, on numerous occasions, ICS has refused to comply with this provision.

59. To the extent ICS obtained any liability insurance intended to satisfy Section 16 of the BAA, ICS is obligated to provide COH and Starr with a copy of such policy or certificate. In addition, to the extent ICS failed to obtain such insurance, ICS is in breach of Section 16 of the BAA.

60. ICS's refusal or failure to provide such a policy or certificate, or to confirm that no such policy exists, gives rise to an actual and justiciable controversy between the parties concerning ICS's obligations under Section 16 of the BAA and Starr's and COH's rights to such information.

61. Accordingly, Starr, as subrogee of COH, requests that this Court declare that to the extent ICS obtained liability insurance intended to satisfy Section 16 of the BAA, ICS has a present and continuing obligation to provide COH and Starr with a copy of such policy or a certificate evidencing such policy upon written request, and that any failure to do so constitutes a breach of Section 16 under the BAA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Starr respectfully prays for the following:

a. The Court award Plaintiff Starr, as subrogee of COH, compensatory damages and attorney's fees under Counts I and II in an amount to be proven at trial;

b. The Court order ICS to perform under the terms of Section 16 of the BAA by providing a copy of the liability insurance with limits of $3 million for each claim that names COH as an additional named insured;

c. The Court declares that to the extent Defendant ICS obtained liability insurance intended to satisfy Section 16 of the BAA, that ICS has a present and continuing obligation to provide COH and Starr with a copy of such policy or a certificate evidencing such policy upon written request, and that any failure to do so constitutes a breach of Section 16 under the BAA;

d. The Court award Plaintiff Starr, as subrogee of COH, pre-judgment and post-judgment interest in accordance with law;

e. The Court award Plaintiff Starr, as subrogee of COH, its expenses and costs incurred in this action, including attorney's fees; and

f. The Court award Plaintiff Starr such other and further relief as it deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff Starr demands a jury trial of all issues so triable.

Dated: June 16, 2026

TROUTMAN PEPPER LOCKE LLP

By: *<u>/s/ Toyja E. Kelley</u>*
Toyja E. Kelley (Bar No. 26949)
401 9th Street, NW, Suite 1000
Washington, DC 20004
(202) 274-2950
toyja.kelley@troutman.com

Kevin F. Kieffer (*pro hac vice* to be filed)
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92618
Phone: 949.622.2700
Email: Kevin.Kieffer@troutman.com

Thomas S. Hay (*pro hac vice* to be filed)
501 Grant Street, Suite 300
Pittsburgh, PA 15219
Phone: 412.454.5812
Email: Thomas.Hay@troutman.com

Andrew R. Nagode (*pro hac vice* to be filed)
401 9th Street, N.W., Suite 1000
Washington, DC 20004
Phone: 202.274.2890
Email: Andrew.Nagode@Troutman.com

*Counsel for Plaintiff Starr Surplus Lines Insurance Company*